[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by complaint returnable May 10, 1994. She also sought custody and support of the parties' two minor children, alimony, a fair and equitable property settlement, and other relief, as on file.
The defendant husband filed an answer admitting the irretrievable breakdown of the marriage and the other allegations in the complaint. In his cross complaint, he also sought a dissolution on that ground, joint custody and support of the minor children, and other relief, as on file.
At trial, the parties and their two children were represented by counsel. The spouses testified and submitted financial affidavits. Child support guidelines worksheets were submitted by the children's counsel. Each spouse introduced a number of documents into evidence, including real estate appraisal reports and tax records. The plaintiff also called John Marcure, a certified public accountant, to testify concerning valuation of the defendant's United Nuclear Corporation (UNC) retirement plan, and his report was admitted into evidence.
The spouses agreed on a joint legal custodial order for the minor children, with primary physical custody in the mother and reasonable rights of visitation to the father.
The parties also agreed in writing that the disposition of certain their tangible personal property, other than motor vehicles, would be submitted to binding arbitration, and that each would pay one half the cost of such arbitration.
The parties also filed a written stipulation irrevocably designating the two minor children as equal beneficiaries on all life insurance proceeds on policies presently in force until the youngest child reaches 18.
The parties and children submitted written proposed orders and made oral argument; the court continued all pendente lite orders in effect, and ordered the parties to file a stipulation relating to the wife's retirement plan and the husband's military pension plan, or statements of these plans' benefits, or request a hearing thereon. CT Page 10113
The court also ordered them to file copies of their 1994 state and federal income tax returns, all by September 25, 1995, at which time the hearing was to be deemed closed. The orders as to the tax returns were complied with; the orders as to the pension benefit information were partially complied with.
From the evidence, I find as follows:
The parties were married in Hamden, Connecticut, on November 7, 1969. The wife's birth name was Czuchra. The parties have resided continuously in this state for at least one year prior to the date of the complaint, April 26, 1994. They have two minor children, issue of the marriage: Tristy, born October 24, 1978; and Lance, born October 7, 1981. No other minor children were born to the wife since the date of the marriage. Neither party or the children are recipients of public assistance. All statutory stays have expired and this court has jurisdiction.
The husband is 51 years of age, with some college. After a long career at United Nuclear Corporation as an x-ray technician/inspector, he lost his job in 1991 when the plant he worked in closed. He entered and graduated nursing school under a special retraining program and became a licensed practical nurse. He has worked for Yale New Haven Hospital in that capacity since 1992 and earns $483[1] per week gross, $352 per week net. He also earns Naval Reserve pay, as a chief petty officer, grade E-7, of $64 per week gross, $39 per week net. He has a total net income of $391 per week.
The husband had a real estate agent's license, which he let lapse. He discloses no earnings from this vocation.
The wife is 48 years of age and a high school graduate, with some vocational school and college. She worked as a hairdresser for about 13-15 years, until she was compelled to leave this career due to allergic reactions. She is licensed and had managed a beauty salon; afterward, from time to time, she continued part-time hairdressing in her home. She now works full time for a local hospital as a collection representative and part time as a travel agent. She earns $524 gross from her full-time job plus $28 per week gross from the travel agency. Her total net weekly income is $380. She enjoys perquisites from the travel agency job. She also has health insurance and retirement benefits from her hospital job, to which she contributes. Her gross annual income from the hospital has increased from $7,034 when she began CT Page 10114 employment in 1984 to $25,543 in 1994. She expects her gross income to decrease by about $40 per week as a result of her employer's termination of shift and other differential pay increments.
The court will not delve at length into the causes of the disintegration of the parties' marriage. Each spouse accused the other of deficiencies in behavior. Suffice it to say, I find the defendant's testimony on the cause of its destruction more credible and attribute the greater responsibility of the breakdown of this marriage of almost 26 years duration to the wife. I recognize that there were a number of other contributing factors. However, these are unnecessary to discuss in any detail, and it would serve no useful purpose to do so. The marriage has now been utterly destroyed and is broken down irretrievably.
The parties have amassed substantial assets. Some were owned by the defendant prior to the marriage. He had approximately $22,000 in savings, $19,000 of which went toward the down payment of the parties' marital dwelling at No. 4 Cross Drive, Waterford, Connecticut, which was purchased by them for $41,000 in 1973, with a mortgage. The wife also claims a contribution to the home purchase but was vague about the amount. The husband also paid about $15,000 for an addition to the home. His UNC and military reserve pension benefits also began accruing prior to the parties' marriage.
The remaining assets of the parties were largely derived from a combination of the husband's savings from his earnings and appreciation in the value of the family home and his investments. His monetary contributions to the marital assets exceeded those of the wife. Until he left the home in June, 1995, he paid all of the expenses associated with the home, which is now mortgage free, and gave the wife a weekly grocery allowance. Her earnings were principally devoted to her automobile expenses, incidental expenses for herself and her children, and her clothing, for which she spent lavishly. Despite the husband's frugality, the parties generally enjoyed a middle-class lifestyle, including memberships in yacht and country clubs.
The wife reports a total of $240,648 in assets on her financial affidavit. This includes one-half interests in the marital dwelling of $82,000 and the Florida property of $25,700; her car of $3,000; household furnishings and furniture of $7,500; and $785 in cash in banks; securities of $13,983 (which are CT Page 10115 jointly held); and IRA accounts and retirement funds of $8,680.[2]
She also reports $1,100 in bonds held for the children's education.
Against these assets, the wife reports liabilities of $17,438 which includes approximately $14,000 in credit card bills and $2,150 in attorney's fees for her prior attorney.
The husband reports a total of $388,925 in assets on his financial affidavit. This includes the family home valued at $165,000, and the Florida property at $30,000 less mortgage of $2,000, leaving equity of $28,000; his one-half interests in these properties would be $82,500 and $14,000 respectively. He also reports the wife's car at $3,000; boats owned by the children valued at $2,600;[3] life insurance with net cash value of $5,164; cash on hand in banks of about $771; an interest in land in Moodus, Connecticut, of $700; furniture and tangible personal property in the home of $30,000; $113,983 in deferred annuity accounts;[4] an IRA account of $2,550 and his military reserve and UNC pensions with present values, in the aggregate, of $42,000.
The husband reports $20,190 in liabilities of which $2,000 is past due income taxes and $11,700 for credit card[5] or similar balances.
I find from the credible evidence that the disputed values of certain assets are as follows:
The marital dwelling at 4 Cross Drive, Waterford, Connecticut, $165,000 less unpaid property taxes of approximately $2,500, leaving equity of $162,500; the husband's UNC pension, assuming pay status at age 55, $52,612; this would provide him with $439 per month, at a straight life option with no survivor benefit;[6] and, the Florida property, $35,000 less mortgage of $2,000, leaving equity of $33,000. The husband also expects to receive $212[7] per month from his military reserve retirement plan commencing at age 60. On the evidence presented, the court declines to determine a more precise, present value of the retirement plans relating to the husband's military reserve service, or the wife's L M Hospital employment. The court cannot understand why the parties and their counsel did not provide this evidence or a stipulation as to the values of these pensions, despite the court's express invitation to do so. This is especially so because the plaintiff called an expert to CT Page 10116 testify on the present value of the husband's UNC pension. In the light of the fact that the monthly benefits accruing to the parties are comparable (although the wife's are $12 per month more, they commence at age 65, while the husband's mature at his age 60), I conclude that the present values of the two plans are modest, but not significantly disparate. After consideration of all of the circumstances, I adopt the `present division' method in the allocation and distribution of the three retirement plans at issue. See Krafik v. Krafik, 234 Conn. 783 (1995).
The following additional findings are made.
The parties made approximately equal nonmonetary contributions to the marriage and the accumulation of their assets. They have approximately equal employability, vocational skills, earnings and earning capacity, and therefore comparable opportunity to acquire capital assets and income in the future. The husband's overall contributions, both monetary and nonmonetary, to the acquisition, preservation and appreciation in value of the parties' `marital estate' exceeded those of the wife.
I reject the plaintiff's claim that the value of the marital dwelling of $165,000 as reported by her appraiser should be reduced by (1) any broker's commission expended upon a sale of the premises; and (2) by the costs of certain repairs. As to the first claimed discount, a broker's commission is speculative, as there is no sale pending or intended at this time, nor is there any credible evidence that in the event of such sale, a broker would in all likelihood be engaged. As to the second, the plaintiff's real estate appraiser was made aware by the plaintiff of the items requiring repair, and presumably took them into account in the appraisal value, which was in an `as is' condition.
The husband leases his motor vehicle. He omitted his military reserve (SGLI) term life insurance policy with $50,000 proceeds payable upon his death from his financial affidavit.
Neither party listed the real estate taxes past due on the marital home on their respective financial affidavits. It is significant to note that the plaintiff includes $36 per week on her affidavit as payment on account of such taxes and has disclosed $58 per week for this same expense in two earlier affidavits recently submitted. CT Page 10117
The court observes the somewhat cavalier manner in which the parties and counsel have dealt with their financial affidavits and their valuations of assets upon which so much depends in the trial of a domestic relations case. At the same time, they have vigorously litigated this matter, both pendente lite and at trial, over peripheral issues such as scheduling and discovery, which ordinarily should have been beyond dispute. By doing so, they have added heat, delay and expense, but not light, to the determination of this case.
Each party claimed the other party owns or had an interest in assets which were not disclosed. I find neither claim proven.
The parties testified about assets and interests therein presently or formerly owned by the other. These included SNET Company stock allegedly owned by the husband with his mother and a fractional interest in a parcel of land in Moodus, Connecticut, with his brothers. On the other hand, the husband testified that the wife once held a $20,000 certificate of deposit jointly with her brother, which the wife testified she relinquished to her brother; also, the husband testified that she once had $2,500 in cash and some proof sets (of United States coinage) in a safe in the home. There was no credible evidence of the values of the interests in the stock or coins. Nor was there any documentation or other authentication or verification of the present existence or whereabouts of any of the unreported personal property. Needless to say, apart from the reference to the Moodus property, neither disclosed these assets, or interests therein, on their respective financial affidavits. Accordingly, I decline to consider them.
The husband, on three occasions, paid off obligations of the wife, in the aggregate of $15,000, incurred by her when she overspent her credit cards.
The presumptive amount of the defendant's child support obligation for the parties' two children suggested by the child support and arrearage guidelines is $78.50 per child per week for a total of $157 per week. The court is not persuaded by the husband's claim that the lower expenses associated with a mortgage-free home (which the parties suggest in their written proposed orders the wife should reside in and be set out to her)[8]
justify a downward deviation from the guidelines. He points CT Page 10118 to no specific guidelines criterion or other authority for this proposition.
The parties have participated in, and successfully completed, the parenting education program.
The wife refused to sign joint federal and state income tax returns for 1994, and the parties filed separately. From the evidence, I cannot find that such refusal caused the husband a financial loss of approximately $2,000, as he claimed.
A fee application was submitted by for the attorney for the minor children in the total amount of $1,517.50. I find this sum fair and reasonable and reasonably necessary for the representation of the interests of the children in this case. I also find that the wife paid $250 toward this amount, leaving a net balance of $1,267.50 due.
I have considered all of the criteria in General Statutes §§ 46b-81, 46b-82, 46b-84, 46b-215a and46b-62 in the determination of the financial orders set forth below. I have also considered the taxable consequences and implications of said awards.
Accordingly, the following orders shall enter:
(1) A decree dissolving the marriage on the ground of irretrievable breakdown.
(2) Joint legal custody of the two minor children is awarded to the parties; primary physical custody shall be with mother, liberal and reasonable rights of visitation and access with father, bearing in mind their extracurricular activities. The children shall reside in Waterford.
(3) The defendant shall pay to the plaintiff the sum of $78.50 per week per child, for a total of $157 per week, as child support, which shall be secured by immediate wage garnishment, payable directly to the plaintiff. The parties shall be obligated to support the children pursuant to § 46b-84.
(4) The plaintiff shall maintain her present job-related health insurance for the benefit of the minor children; the parties shall equally share the unreimbursed, uncovered CT Page 10119 health expenses for the children. An order pursuant to § 46b-84d shall enter.
(5) No alimony is awarded to either party.
(6) Each party shall pay their own attorney's fees.
(7) The wife shall take, have and own all right, title and interest in and to the following real and personal property: No. 4 Cross Drive, Waterford, Connecticut, subject to real estate taxes which she shall pay and the mortgage assigned to the husband set forth in paragraph 15 hereof; her 1986 Volvo automobile; her jewelry and clothing; and her bank and IRA accounts; her L M and Aetna retirement plans; the `children's bonds'; and $14,000 of the Franklin U.S. government bonds.[9]
(8) The husband shall take, have and own all right, title and interest in and to the following real and personal property: the Florida real estate at Palm Court; his interest in the Moodus, Connecticut property; his military reserve retirement plan and sixty-seven (67%) percent of his UNC retirement plan; possession of his leased automobile; his clothing and the personal effects now in his possession; his IRA account; his bank accounts; the Paine Webber and Fidelity accounts; his life insurance cash value, and, the remainder of the Franklin U.S. government bonds.
(9) The husband shall have the income tax dependency exemption for the younger child. The wife, the older child. When the older child may no longer be claimed, the parties shall claim the younger child in alternating years, with the husband having the child the first such applicable year.
(10) Each shall pay the obligations shown on their respective financial affidavits. If any of the Chemical Bank obligations reported are joint, then those shall be paid equally.
(11) The husband shall pay attorney's fees to the children's attorney in the amount of $758.75 for all services rendered by her on behalf of the children; the wife shall pay $508.75. Said sums shall be paid as follows: $250 each within thirty (30) days and the balance at the rate of $100 per month each until paid. CT Page 10120
(12) The tangible personal property, not otherwise disposed of in these orders shall be submitted to binding arbitration as provided in the parties' stipulation. The costs of the arbitration shall be borne equally. The court retains jurisdiction of this matter until finally disposed of.
(13) Pursuant to their agreement, the parties shall irrevocably designate the minor children as equal beneficiaries on their life insurance policies until the youngest child reaches age 18. The policies subject to this order are:
 husband's: New York Life $ 15,000 SGLI $ 50,000 ------ total $ 65,000
wife's: J. Hancock $ 1,000
If the wife has life insurance through her hospital employment, such insurance shall be included in this order. Each shall execute and deliver authorizations to the other so the other may from time to time determine the status and good standing of the designated policies. Neither party shall borrow against said policies or otherwise impair the death proceeds thereof.
(14) There is assigned to and vested in the wife a thirty-three (33%) percent interest, valued as of the present time, in the husband's UNC retirement plan, by Qualified Domestic Relations Order (QDRO) or other appropriate instrument. The husband shall elect a survivor beneficiary option, naming the wife thereon; in the event the wife predeceases him, then said thirty-three (33%) percent portion assigned to her shall revert to him. The husband shall also designate the wife as survivor beneficiary of his military reserve retirement plan; the wife shall do likewise with her L M Hospital retirement plan, as to the present benefits of said plans, both designations to be accomplished by QDROs. The court retains jurisdiction over the QDROs and the transfer of the Franklin U.S. government bond account described in paragraph 7, until accomplished.
(15) The wife shall execute and deliver a promissory note to the husband, secured by a mortgage on the marital dwelling at No. 4 Cross Drive, Waterford, Connecticut, in the amount of $8,500 payable with interest at the rate of four (4%) CT Page 10121 percent per annum. The principal and interest shall be due and payable in full upon the first to occur of the following: sale of the premises; the wife's ceasing to reside there as her principal residence; her death or remarriage; or November 1, 2000.
(16) The boats shall belong to the children as disclosed on the husband's financial affidavit.
(17) All documents necessary or incidental to the effectuation of the orders set forth shall be completed and exchanged within thirty (30) days hereof.
Teller, J.